IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD GOODE,

        Plaintiff,

v.

MAYOR MICHAEL NUTTER, et al.,

        Defendants.

CIVIL ACTION
NO. 11-6420

<u>OPINION</u>

**Slomsky, J.**                                                                                                        August 8, 2017

## I. INTRODUCTION

Plaintiff Ronald Goode, proceeding pro se, brings this suit against Former Mayor Michael Nutter, Former Commissioner Louis Giorla, Former Warden John Delaney, and Former Warden Michele Farrell (collectively "Defendants") for alleged violations of his constitutional rights stemming from the conditions of his pretrial confinement at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. (Doc. No. 32.) Defendants filed a Motion to Dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6), which is now before the Court for a disposition. (<u>See</u> Doc. No. 42.)

## II. BACKGROUND

Plaintiff Ronald Goode alleges that he suffered federal civil rights violations due to the overcrowded conditions at Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania, where he was incarcerated as a pretrial detainee at the time he instituted this action. In the Second Amended Complaint, Plaintiff asserts that Defendants' failure to address overcrowding amounted to a constitutional violation, triggering civil liability under 42 U.S.C. § 1983 (commonly referred to as "Section 1983"). (Doc. No. 32.) Plaintiff claims that the

1

overcrowded conditions of pretrial confinement violated his due process rights under the Fourteenth Amendment. He alleges that he was placed in a "triple-cell," a two person cell with a plastic boat on the floor for a third inmate. (Doc. No. 30 at 1). Plaintiff also alleges that the overcrowded conditions included: "inadequate laundry access and medical care; unsanitary food handling; insufficient recreational space; [and] rodent infestations."[1] (Id.) Such conditions led Plaintiff to suffer acid burns, chronic back pain, and migraine headaches. (Id.)

On October 13, 2011, Plaintiff, proceeding pro se, initiated this action against Defendants. (Doc. No. 1.) On November 24, 2014, Plaintiff filed an Amended Complaint. (Doc. No. 21.) On September 18, 2015, the Honorable Norma Shapiro of the Eastern District of Pennsylvania issued an Opinion and an Order dismissing the Amended Complaint and granting Plaintiff leave to amend. (Doc. Nos. 30-31.) In response, on October 1, 2015, Plaintiff filed the Second Amended Complaint against Defendants. (Doc. No. 32.) On March 8, 2017, Defendants filed a Motion to Dismiss the Second Amended Complaint for Failure to State a Claim. (Doc. No. 42.) This Motion is presently before this Court for a decision.[2]

### III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to

---

[1] In the Second Amended Complaint, Plaintiff briefly mentions an assault. (Doc. No. 32 at 2.) Plaintiff explained to the Court, however, that the assault is the basis of a separate cause of action, and will not be considered here. (See Civil Action No. 13-3682, Doc. No. 91 at 4:17-5:20.)

[2] In reaching a decision, the Court has considered the Second Amended Complaint (Doc. No. 32) and the Motion to Dismiss (Doc. No. 42). On May 11, 2017, the Court granted Plaintiff an extension of time to file a response in opposition to the Motion. (Doc. No. 49.) Pursuant to the May 11, 2017 Order, Plaintiff was required to file a response on or before May 31, 2017. (Id.) However, no response was filed.

defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at

3

679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"  Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief."  Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

## IV.   ANALYSIS

The Second Amended Complaint raises a claim against Former Mayor Michael Nutter, Former Commissioner Louis Giorla, Former Warden John Delaney, and Former Warden Michele Farrell ("Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Doc. No. 32.)  Plaintiff challenges his conditions of confinement and contends that the overcrowded conditions at CFCF amount to a violation of his due process rights under the Fourteenth Amendment.  (Id.)  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the Second Amended Complaint in its entirety for failure to state a claim.  (Doc. No. 42.)

### A.   Plaintiff Has Failed to State an Underlying Constitutional Violation

Plaintiff contends that he was incarcerated at CFCF in overcrowded conditions, which constituted a violation of his due process rights under the Fourteenth Amendment.  (Doc. No. 32.)  To state a Section 1983 claim, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States and must show that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Adkins, 487 U.S. 42, 48 (1988). Defendants argue that the facts in the Second Amended Complaint do not plausibly suggest a violation of a right secured by the Constitution. (Doc. No. 42.)

Challenges to the constitutionality of pretrial confinement are evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Under the due process clause, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Hubbard v. Taylor, 399 F.3d 150, 158 (3d. Cir. 2005). To decide whether a pretrial detainee's constitutional rights have been violated, a court must ask whether the condition "is imposed for punishment or . . . [for] some other legitimate government purpose." Bell, 441 U.S. at 538.

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.

Id. at 539. The United States Court of Appeals for the Third Circuit has distilled Bell's teachings into two-step test. See Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983). The first step requires an analysis of "whether any legitimate purposes are served by these conditions," and the second step asks "whether these conditions are rationally related to these purposes." Id. In Di Buono, the Third Circuit continued: "In assessing whether the conditions are reasonably related to the assigned purposes, we must, further, inquire as to whether these conditions 'cause [inmates] to endure [such] genuine privations and hardship over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned for them." Id. (quoting Bell, 441 U.S. at 542). To determine whether given

5

conditions constitute "punishment," a court must therefore consider the totality of circumstances within an institution. Di Buono, 713 F.2d at 996.

Here, Plaintiff alleges that he was "unlawfully housed" in three-person and four-person prison cells, but does not elaborate further about the impact of the allegedly overcrowded cells in the Second Amended Complaint. (Doc. No. 32 at 1-3.) Previously, in his Amended Complaint, Plaintiff claimed that the overcrowded conditions caused denial of assistance for serious medical needs, constant "lock-downs," and "fear . . . caused by violence over the shortage of phones, showers, recreation activity." (Doc. No. 21 at 3-4.) Plaintiff also explained that he was housed in a 7' x 10' cell with two other inmates. (Id. at 6.) The cell was designed for two people, so the third occupant slept on a plastic bed on the floor adjacent to the toilet. (Id.)

A plaintiff who fails to provide sufficient information to establish that he suffered "genuine privations and hardship over an extended period of time," will be unable to demonstrate that his due process rights were violated. See Tapp v. Proto, 718 F. Supp. 2d 598, 613 (E.D. Pa. 2010) (holding that a plaintiff had "failed to show that any deprivation he suffered was sufficiently serious to rise to the level of a constitutional violation" despite pleading that he was subjected to triple-bunking—placement of three men in a two-man cell—for up to six weeks); Allah v. Ricci, 532 F. App'x 48, 50-51 (3d Cir. 2013) (finding that a cell that leaked water when it rained was not a violation of the prisoner's constitutional rights); Gardner v. Lanigan, No. 13-7064, 2013 U.S. Dist. LEXIS 177603, at *12 (D.N.J. Dec. 18, 2013) (concluding that a plaintiff who provided only a "bare bones statement that, at some point in time, he slept on a cold floor and he was confined to a cell lacking light and drinking water, without more, is not factually sufficient" to sustain a successful constitutional claim under Iqbal); Wagner v. Algarin, No. 10-2513, 2010 U.S. Dist. LEXIS 133433, at *1 (E.D. Pa. Dec. 16, 2010)

(holding that a plaintiff who alleged that he had been required to sleep in "hazardous" conditions in gyms, classrooms, and cells with limited space per person had not alleged facts sufficient to persuade the court that the conditions of his confinement amounted to punishment in violation of his constitutional rights).

Viewing the facts in the light most favorable to Plaintiff, he has not provided the Court with sufficient facts to plausibly allege a violation of his Fourteenth Amendment right to due process. In his Second Amended Complaint, Plaintiff did not provide information concerning the size of the cell, the number of persons the cell was designed for, the type of beds Plaintiff slept in, or the duration of this condition. He did not explain how his conditions of confinement amounted to punishment in violation of the Fourteenth Amendment. Bell, 441 U.S. at 538-39. Nor did he explain that these conditions were not imposed for any legitimate government purpose. Id.

Plaintiff has submitted insufficient information to demonstrate "genuine privations and hardship over an extended period of time." Di Buono, 713 F.2d at 992. Because Plaintiff has not stated an underlying constitutional violation for his Section 1983 claim, the Second Amended Complaint will be dismissed.

### B. Plaintiff Has Not Plausibly Alleged Facts Showing Each Defendant's Personal Involvement in the Alleged Wrongdoing

Defendants argue that Plaintiff failed to allege that they had any personal involvement in creating the overcrowded conditions at CFCF. (Doc. No. 42.)

To state a Section 1983 claim, a plaintiff must allege that a defendant had "personal involvement in the alleged wrongdoing." See Phelps v. Flowers, 514 F. App'x 100, 102 (3d Cir. 2013) (writing that "liability under § 1983 cannot be premised on the theory of respondeat superior; instead, each individual must have personal involvement in the alleged wrongdoing");

7

see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (establishing that "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dept. of Corrs., 806 F.3d 210, 222 (3d Cir. 2015). In addition, although a court may infer that a defendant had "contemporaneous knowledge of wrongful conduct from the circumstances . . . the knowledge must be actual, not constructive." Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995)). A plausibly stated Section 1983 claim will include the conduct, time, place, and persons responsible for the alleged wrongdoing. Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980).

Plaintiff alleges that Defendants were vicariously liable for the overcrowded conditions at CFCF.[3] Specifically, Plaintiff alleges Former Mayor Michael Nutter "fail[ed]" to handle the overcrowding problem and "ignore[d]" the violation of constitutional rights. (Doc. No. 32 at 2.) Similarly, Plaintiff claims that Former Commissioner Louis Giorla "fail[ed]" to handle the overcrowding problem. (Id.) Plaintiff states that Former Warden John Delaney was warden at the time that Plaintiff initiated this action in 2011. (Id.) Finally, Plaintiff did not provide any information to support his claim against Former Warden Michele Farrell. (See id.)

Plaintiff did not articulate any specific conduct by the Defendants which led to the conditions of which he complained.[4] Plaintiff has not alleged the personal involvement of

---

[3] The United States Supreme Court has held that Section 1983 claims cannot be based on vicarious liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).

[4] Plaintiff also did not articulate the particular time and place pertinent to the conditions of which he complained.

8

Defendants Michael Nutter, Louis Giorla, John Delaney, or Michele Farrell in creating or maintaining the allegedly overcrowded conditions of confinement in CFCF in their individual capacities. Therefore, the Second Amended Complaint against Defendants will be dismissed.[5]

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 42) will be granted. An appropriate Order follows.

---

[5] Plaintiff will not be granted leave to further amend the Second Amended Complaint. Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997). For example, "a district court need not grant leave to amend a complaint if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

After reviewing the procedural history of this case, it is clear that allowing Plaintiff to amend his pleadings once again would be futile. More than five years ago, on October 13, 2011, Plaintiff initiated this action. (Doc. No. 1.) He filed an Amended Complaint on November 24, 2014. (Doc. No. 21.) Thereafter, Defendants filed a Motion to Dismiss. (Doc. No. 23.) On March 19, 2015, Plaintiff filed a Response in Opposition to the Motion. (Doc. Nos. 27-28.) On September 18, 2015, the Honorable Norma Shapiro of the Eastern District of Pennsylvania issued an Opinion and Order dismissing the Amended Complaint and granting Plaintiff leave to amend. (Doc. Nos. 30-31.) In response, Plaintiff filed the Second Amended Complaint. (Doc. No. 32.)

On March 8, 2017, Defendants filed a Motion to Dismiss the Second Amended Complaint. (Doc. No. 42.) Subsequently, the Court ordered Plaintiff to respond to the Motion on or before April 19, 2017. (Doc. No. 43.) The Court extended Plaintiff's deadline to respond to May 4, 2017. (Doc. No. 46.) Thereafter, Plaintiff filed a Motion for Enlargement of Time to Respond. (Doc. No. 47.) On May 11, 2017, the Court granted Plaintiff's Motion for Enlargement of Time and ordered Plaintiff to respond by May 31, 2017. (Doc. No. 49.) To date, Plaintiff has not filed a response to the Motion to Dismiss.

Thus, at this point, there has been not one, but two rounds of motions practice on Defendants' Motions to Dismiss. Plaintiff has filed three different complaints in this action, and has had two opportunities to amend the Complaint over the course of more than five years of litigation. Further amendment will not cure the defects in the claims raised. Consequently, amending the Second Amended Complaint would be futile and leave to amend will not be granted.